UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. **20-14004-E**

---

UNITED STATES OF AMERICA,

Appellee,

-vs-

LAKESIA L. HARDEN.

Appellant.

---

On direct appeal from a conviction in the
United States District Court for the Southern District of Georgia

---

**BRIEF OF APPELLANT**

---

Daniel J. O'Connor
Georgia Bar No. 216133
Attorney for Appellant

Bryant O'Connor LLP
502 Jackson Street
Vidalia, GA 30474
912-537-9021
djo@bryantoconnor.com

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 20-14004-E |
| | ) | |
| LAKESIA L. HARDEN, | ) | |
| | ) | |
| Appellant. | ) | |

**CERTIFICATE OF INTERESTED PERSONS**

As required by 11th Cir. R. 26.1-1, LAKESIA L. HARDEN,

through the undersigned counsel, hereby files her Certificate of

Interested Persons and Corporate Disclosure Statements as follows:

Bowen, Jr., Hon. Dudley H., Senior U.S. District Court Judge

Bryant O'Connor, LLP, Law firm of Defendant's Attorney

Christine, Bobby L., United States Attorney

Davids, Justin G., Assistant United States Attorney

Epps, Hon. Brian K., United States Magistrate Judge

Harden, Lakesia Lashea, Appellant

Linder, Tremayne O., Co-defendant

Maddox, Tina Euginia, Attorney for Co-defendant T. Linder

Marchman, Jr., Capt. Michael A., former Special Assistant United States Attorney

O'Connor, Daniel James, Attorney for Appellant

Rafferty, Brian T., former Assistant United States Attorney

Syms, Jr., Henry (Hank) W., Assistant United States Attorney

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

This 12th day of February, 2021.

Respectfully submitted,

S/ Daniel J. O'Connor
Daniel J. O'Connor
GA BAR NO. 216133
Attorney for Lakesia L. Harden

Bryant O'Connor LLP
P.O. Box 28
502 Jackson Street
Vidalia, GA 30475
912-537-9021 (P)
912-537-3807 (F)

djo@bryantoconnor.com

## STATEMENT REGARDING ORAL ARGUMENT

Relying on a probation Fourth Amendment waiver of a co-tenant, law enforcement officers searched Appellant Lakesia L. Harden's residence without a search warrant and without her express consent even though she was present, leading to the discovery of controlled substances relied upon by the Government to convict Harden in the underlying case. Even if the search was valid as to her co-tenant, it was constitutionally unreasonable as to her. This case concerns whether people who live with probationers inherently have diminished Fourth Amendment protections. This case presents an important Fourth Amendment issue, and oral argument would significantly aid the decisional process. Harden therefore requests oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................ C-1

Statement Regarding Oral Argument ..................................................... i

Table of Contents ...................................................................... ii

Table of Citations ...................................................................... v

Statement of Subject-Matter and Appellate Jurisdiction ...................... 1

Statement of the Issues.................................................................... 2

Statement of the Case ...................................................................... 2

    1.    Course of proceedings and disposition in the court below .... 2

    2.    Statement of the facts ........................................................... 4

        a.    Harden's troubled roommate, Tremayne Linder ......... 5

        b.    Linder's probation warrant leads to a visit
            to Harden's home by police ......................................... 6

        c.    Law enforcement detain Harden and search her bedroom
            and closet, finding controlled substances ................... 7

        d.    Harden's motion to suppress denied by district court .. 9

    3.    Statement of the standards of review ................................... 11

Summary of the Argument .................................................................... 12

Argument and Citation of Authority .................................................... 15

1.    Did the district court err in denying Harden's motion to suppress evidence seized during a warrantless search of her home, said search being based solely on her co-tenant's probation Fourth Amendment waiver, when Harden occupied the home during the police encounter and did not consent to the search? ........................................................... 15

a.    Harden had not consented or otherwise waived her right to be free of unreasonable searches and seizures ...... 16

b.    Law enforcement unlawfully relied solely on a Fourth Amendment waiver of a co-tenant to search Harden's home when she was present and did not consent to the search ........................................................... 19

c.    Even if in some cases there is an obligation for a co-tenant to object to a search, law enforcement's seizure of Harden prior to the search limited her ability to object, and the search of her home was objectively unreasonable under a Fourth Amendment analysis........................ 27

2.    Did the district court err in denying Harden's motion to suppress her custodial statements provided to law enforcement

following arrest based on controlled substances found in her

home, given that said evidence was unlawfully seized? ....  31

     Because the evidence which justified her arrest for the

underlying drug crime was the product of an unlawful

search, the district court erred in not suppressing from

the admissible evidence the statements made to law

enforcement shortly thereafter ................................  31

Conclusion ............................................................. 32

Certificate of Compliance .................................................. 34

Certificate of Service ................................................. 35

# TABLE OF CITATIONS

## Cases

Bashir v. Rockdale County, Ga, 445 F.3d 1323 (11th Cir. 2006) ............ 18

Bumper v. North Carolina, 391 U.S. 543 (1968) ................................... 29

Florida v. Royer, 460 U.S. 491 (1983) ................................................... 18

*Georgia v. Randolph, 547 U.S. 103 (2006) ....................... 12, 21-27, 29-30

Griffin v. Wisconsin, 483 U.S. 868 (1987) ........................................ 17-18

*Katz v. United States, 389 U.S. 347 (1967) ..................... 15-16, 20, 25-26

I.N.S. v. Delgado, 466 U.S. 210 (1984) ................................................. 27

Miranda v. Arizona, 384 U.S. 436 (1966) .............................................. 28

Morrisey v. Brewer, 408 U.S. 471 (1972) ............................................... 17

United States v. Bailey, 691 F.2d 1009 (11th Cir. 1982) ........................ 31

United States v. Blake, 284 F. App'x 530 (10th Cir. 2008) .............. 24, 25

United States v. Cooke, 674 F.3d 491 (5th Cir. 2012) ........................... 23

United States v. Delancy, 502 F.3d 1297 (11th Cir. 2008) .................... 23

United States v. Eyster, 948 F.2d 1196 (11th Cir. 1984) ....................... 20

United States v. Harris, 526 F.3d 1334 (11th Cir. 2008) ...................... 23

United States v. Henderson, 536 F.3d 776 (7th Cir. 2008) ................... 23

United States v. Hudspeth, 518 F.3d 954 (8th Cir. 2008) ..................... 24

v

United States v. Jordan, 635 F.3d 1181 (11th Cir. 2011) ...................... 28

United States v. Knights, 534 US. 112 (2001) ..................................... 17

United States v. Luna-Encinias, 603 F.3d 876 (11th Cir. 2010) ........... 11

United States v. Martinez, 949 F.2d 1117 (11th Cir. 1992) .............. 18-19

United States v. Matlock, 415 U.S. 164 (1974) .................................... 22

United States v. Newsome, 475 F.3d 1221 (11th Cir. 2007) ................. 11

United States v. Purcell, 236 F.3d 1274 (11th Cir. 2001) ...................... 18

United States v. Shrader, 675 F.3d 300 (4th Cir. 2012) ........................ 23

United States v. Spivey, 861 F.3d 1207 (11th Cir. 2017) ...................... 11

United States v. Telcy, 362 F. App'x 83 (11th Cir. 2010) ...................... 28

United States v. Timmann, 741 F.3d 1170 (11th Cir. 2013) ................. 30

United States v. Watkins, 760 F.3d 1271 (11th Cir. 2014) ................... 23

**Statutes**

18 U.S.C. § 3231 ...................................................................... 1

21 U.S.C. § 841(a)(1) ............................................................. 1, 3

28 U.S.C. § 1291 ...................................................................... 1

O.C.G.A. § 42-8-60 .................................................................. 6

## Other

Fed R. App. P. 4 (b)(A)(i) ............................................................. 1

Fed. R. App. P. 32(a)(6) ............................................................ 33

Fed. R. App. P. 32(a)(7)(B) ........................................................ 33

Fed. R. App. P. 32(a)(7)(B)(iii) ................................................. 33

11th Cir. R. 28-5 ................................................................. 1

U.S. Const. Amend. IV ....................................................... 15, 20

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

A jury returned a verdict of guilty against Appellant Lakesia L. Harden on Count One of the underlying indictment, Possession with Intent to Distribute Controlled Substances under 21 U.S.C. § 841(a)(1), at the conclusion of a jury trial in the U.S. District Court for the Southern District of Georgia on October 29, 2019. [Doc. 115][1] Prior to the trial, Harden had filed a Motion to Suppress evidence seized from her home [Doc. 44] and a Motion to Suppress her statements, [Doc. 45] both of which were denied. [Doc. 77] By written judgment, the district court sentenced Harden to 120 months' imprisonment. [Doc. 163] The notice of appeal was filed within 14 days of the written judgment, and thus it was timely under Fed. R. App. P. 4(b)(A)(i).

Since the charged offense violated the laws of the United States, the district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

---

[1] Pursuant to 11th Cir. R. 28-5, references to the record in a brief must be to document number and page number. This brief cites to transcripts by document number for the notice of filing of transcript, followed by the page number assigned by the court reporter. For illustration, the suppression hearing transcript is cited herein as Doc. 73, and the jury trial transcript is cited herein as Doc. 173.

## STATEMENT OF THE ISSUES

Harden entered into an agreement with the Government which included a limited waiver of appeal, [Doc. 144] reserving specifically the right to appeal her sentence based on the issues raised in her Motion to Suppress Evidence Obtained from Warrantless Search of Residence [Doc. 44] and her Motion to Suppress Statements and Admissions of Defendant Harden which are Fruit of Unlawful Search and Arrest [Doc. 45] Therefore the issues on appeal are as follows:

1) Did the district court err in denying Harden's motion to suppress evidence seized during a warrantless search of her home, said search being based solely on her co-tenant's probation Fourth Amendment waiver, when Harden occupied the home during the police encounter and did not consent to the search?

2) Did the district court err in denying Harden's motion to suppress her custodial statements provided to law enforcement following her arrest based on controlled substances found in her home, given that said evidence was unlawfully seized?

## STATEMENT OF THE CASE

## 1. <u>Course of Proceedings and Disposition in the Court Below</u>

This case originated from a probation warrant for Harden's boyfriend, co-tenant, and child's father, Tremayne Linder, who had violated his probation terms by missing his mandatory Day Reporting

Center ("DRC") class on April 9, 2018. [Doc. 173, page 97] The Dublin Police Department executed the probation warrant, accompanied by the Department of Community Supervision, through a visit to Harden's home in search of Linder, which turned into a warrantless search of her residence and seizure of controlled substances. [Doc. 173, page 197; Doc 73, page 29] Thereafter, a federal grand jury indicted Harden for a single count of possession with intent to distribute controlled substances (marijuana and methamphetamine) in violation of 21 U.S.C. § 841(a)(1). [Doc. 1]

Harden filed a motion to suppress the evidence seized from her home [Doc. 44] and a motion to suppress evidence of statements of admission made after her arrest. [Doc. 45] Harden objected [Doc. 75] to the report and recommendation to deny Harden's motions to suppress, [Doc. 69] but the district court overruled Harden's objection and adopted the report and recommendation denying the motions to suppress. [Doc. 77] After a two-day trial, a jury convicted Harden of Count One of the Indictment. [Doc. 115] The district court sentenced Harden to a term of 120 months' imprisonment, a downward variance from her applicable guideline range, which Harden is currently serving.

3

[Doc. 163] She then timely filed a notice of appeal to the final judgment.

[Doc. 165] Although Harden had filed a limited waiver of appeal, she

specifically reserved therein the right to appeal the denial of her

motions to suppress. [Doc. 144] In this appeal, Harden challenges only

the denial of her motions to suppress.

2.    **Statement of the Facts**

This case centers around the results of a nonconsensual and

warrantless search of a woman's residence arguably justified only by

the existence of a mandatory waiver of Fourth Amendment rights

applicable only to the woman's roommate. [Doc. 73, pages 28-29] The

woman, Lakesia Harden, was not the subject of any warrant, and she

never gave law enforcement consent to search her home.  [Doc. 73,

pages 27-29] Upon entering her home with Harden's limited consent,

law enforcement detained her on a couch, where "she was not free to

leave." [Doc. 73, page 28] Being deprived of her freedom, she did not

object to law enforcement's subsequent warrantless search of every

room in her home. [Doc. 73, page 28] Said search, in the arresting

officer's own words, would have required him to obtain a search

warrant if he were not relying on the roommate's probation search

4

conditions. [Doc. 73, page 28] In the district court, Harden sought suppression of evidence seized as the result of said search on the basis that the search violated her own Fourth Amendment rights against excessive search and seizure. [Doc. 44] Even if the search was otherwise valid as to her roommate, Harden argued in her motion to suppress and objection to the report and recommendations that the search was unreasonable under the Fourth Amendment. [Doc. 44; Doc. 74] This appeal is from the district court's denial of Harden's motion to suppress evidence seized in her home and her conviction resulting therefrom. [Doc. 165] The record provides ample means to review the underlying facts in this case.

### a.    Harden's troubled roommate, Tremayne Linder

During the relevant time period in 2018, Lakesia Harden resided at 606 Hester Street, Dublin, Georgia, with her infant child. [Doc. 173, pages 10-11] The father of Harden's child, Tremayne Linder, also lived in the residence. [Doc. 173, page 96] Harden worked regularly as a prison guard to support herself and child, but Linder was serving a probation term and made himself dependent on Harden for support and housing, connected to Harden through their common child. [Doc. 173,

page 165] Linder had pleaded guilty pursuant to O.C.G.A. § 42-8-60,

Georgia's first offender statute, to felony state charges in 2016, [Doc.

66-2] and in January 2018 agreed to additional special conditions of

probation in order to avoid a revocation of his probation. [Doc. 66-3; Doc

66-4] Among his special conditions were requirements that he attend

and participate in counseling and classes at the Day Reporting Center

("DRC") and that he submit and consent to searches of his residence

and person at anytime. [Doc. 66-4] Harden was not a party to the

probation conditions, and neither did she execute the waiver of Fourth

Amendment rights consented to by Linder. [see Doc 66-4]

### b.    Linder's probation warrant leads to a visit from the police

On April 9, 2018, Linder failed to attend his mandatory DRC

class, leading his probation supervisor, Officer Timothy Ray of the

Department of Community Supervision ("DCS officer"), to obtain a

probation warrant for Linder's arrest. [Doc. 73, pages 35-36] That same

day, Dublin Police Sergeant Eric Roland ("police officer"), accompanied

the DCS officer to serve the warrant on and arrest Linder at 606 Hester

Street, Harden's

home.[2]  [Doc. 73, page 35] When the DCS Officer knocked on the front

door of the home, Harden answered. [Doc. 73, page 10] After Harden

learned that the officers were looking for Linder, she stated her prior

belief that he was at his DRC class. [Doc. 73, page 11] The police officer

asked for consent to come in the front door to confirm that Linder was

not in the home, and Harden granted consent for the officers to come

inside the house. [Doc. 73, page 11] Harden, however, did not verbalize

consent to a search of every part of the home. [Doc. 73, pages 25-26]

### c.    Law enforcement detain Harden and search her home

Soon after entering the home, the officers noted the scent of

marijuana, [Doc. 73, page 12] and the police officer asked Harden and

her sister, who was also present in the home, to sit on the couch in the

foyer. [Doc. 73, page 28] Harden's sister, soon after being asked to sit,

attempted to go to a different part of the home, but she was stopped by

---

[2] The events and statements made during law enforcement's presence at Harden's home are memorialized in large part on video and audio bodycam footage recorded on a compact disc entered into evidence as Government's Exhibit No. 1 at the trial of Harden, which is part of the record. [Doc. 118] Harden proffers that the most relevant parts for purposes of the issues on appeal are found in the first ten minutes of the video. However, for a factual recitation of said events, Harden's citations herein are primarily to the transcripts of witness testimony in the district court, which are largely consistent with the referenced bodycam footage.

the police officer. [Doc 73, page 27] The police officer later testified that "[a]t that point in time, she was not free to leave." [Doc. 73, page 28]

After confining Harden to the couch, the police officer began indicating that he would search the home, and he called a DCS supervisor to confirm that Linder's probation condition contained a Fourth Amendment waiver. [Doc. 73, pages 28-29] The police officer later testified that, had it not been for Linder's probation search conditions, he "would have secured everyone there and went and typed a search warrant" based off the odor of marijuana. [Doc. 73, page 28] The police officer did not get a search warrant, nor did he ask for or obtain consent from the primary resident of the home, Harden, but he did proceed to search the entire residence based solely on Linder's waiver of Fourth Amendment rights. [Doc. 73, pages 27-29] At no point did Harden verbally voice an objection to a search of her entire residence, but it must be noted that Harden was secured to a couch in the foyer before it became clear that a full search of her home would occur. [Doc. 73, pages 28-29]

The police officer's search of the home ultimately led him to the shelf of a closet in Harden's bedroom, not in plain sight of the foyer,

where he found a bag with controlled substances inside. [Doc. 73, pages 29-30; Doc 173, page 19] These controlled substances were seized and became the basis of criminal charges against both Harden and Linder for trafficking in methamphetamine and marijuana. [Doc. 125; Doc 173, page 59] After further searching the home, law enforcement officers arrested Linder, who had arrived at the home during the middle of the search, [Doc. 73, page 20] and transported Harden, Linder, and Harden's sister to be booked on criminal charges. [Doc. 173, page 178] There, as the result of the search and arrest, a Dublin police officer interviewed Harden, who made admissions used against her at trial.[3] [Doc. 173, pages 106, 114]

### d.    The report and recommendation and denial of Harden's motion to suppress by the district court

Harden sought suppression of the evidence seized in the home because of the lack of consent by her to the search and because law enforcement did not have a search warrant. [Doc. 44] She further sought suppression of her admissions to law enforcement after her

---

[3]The referenced interview is memorialized in a video entered into evidence at the trial of Harden as Exhibits 10-1, 10-2, 10-3, and 10-4. [Doc 122]

arrest because they were the fruit of the unlawful search and arrest. [Doc. 45] However, the report and recommendation recommended denying Harden's motion to suppress the evidence seized in her home. [Doc. 69] The report and recommendation rejected Harden's contention that a search warrant or her consent was necessary since there was reasonable suspicion in light of the smell of marijuana and Linder's state probationary conditions, as well as because she did not voice an objection to the search. [Doc. 69, page 1] Harden timely objected to the report and recommendation, noting that the report failed to take into account that Harden had as a matter of law been arrested prior to the search, and therefore her ability to object to the search was curtailed. [Doc. 74, pages 2, 4] The district court overruled Harden's objections, finding that even if she was arrested that it was incumbent upon her to object to the search if she did not consent to the search. [Doc. 77] Harden's motion to suppress her statements [Doc. 45] was also denied because it was conditioned on the motion to suppress evidence [Doc. 44] being granted. [Doc. 69, page 15; Doc 77] This evidence was admitted into evidence at the trial of the matter, resulting in a guilty verdict against Harden on her indicted charge. [Doc. 115] A final judgment

10

followed, and this appeal arises therefrom.

**3.    <u>Statement of the Standards of Review</u>**

This appeal arises from denial of two motions to suppress, involving determinations of both fact and law and therefore different standards of review. A denial of a motion to suppress involves mixed questions of fact and law." <u>United States v. Spivey</u>, 861 F.3d 1207, 1212(11th Cir. 2017). The Court reviews the district court's findings of fact for clear error, considering all the evidence in the light most favorable to the prevailing party—in this case, the government. <u>Id.</u> But the Court reviews *de novo* the district court's application of the law to those facts. <u>United States v. Luna-Encinas</u>, 603 F.3d 876, 880 (11th Cir. 2010). The Court's review is not moored to the evidence presented at the suppression hearing; it is free to look at the whole record. <u>United States v. Newsome</u>, 475 F.3d 1221, 1224 (11th Cir. 2007).

## SUMMARY OF THE ARGUMENT

An American has a right to freedom from an excessive search and seizure in their home. The fact that your roommate is a probationer does not change this bedrock principle of American law memorialized in the Fourth Amendment to the U.S. Constitution. While a roommate can consent to a search of a common area if the other roommate is not present, it is well established that a present occupant of a premises has at a minimum a right to object to a warrantless search. <u>Georgia v. Randolph</u>, 547 U.S. 103, 122-23 (2006). In some ways, <u>Randolph</u> has resulted in a rigid rule that a clear objection must be raised to suppress a search authorized by a roommate, but such a rigid rule must not be applied indiscriminately. A question of unresolved law arises when it is an absent probationer's compulsive Fourth Amendment waiver which law enforcement relies upon to bypass seeking consent of the present occupant of a house and to search the private spaces of the present tenant without a warrant. Principles of reasonableness embedded in the Fourth Amendment require a finding that using a roommate's general Fourth Amendment waiver to search the other roommate's protected space violates the nonconsenting roommate's rights against

12

excessive search and seizure if that roommate is present and could be asked for consent.

In this case, Dublin Police Sergeant Eric Roland's detention of Lakesia Harden after entering her residence curtailed her ability to object to a search otherwise justified by her roommate Tremayne Linder's probation search conditions. Harden's grant of permission to the police officer to enter the home was not consent to search every nook of her private spaces. However, the police officer used the smell of marijuana in the home as a justification to confine Harden to her couch, and then he searched her entire home without even asking the woman who invited him in the home for permission. Whether she objected to the search or not, her consent to the search was required because the fact that one is related to a probationer does not create any social expectation that one's home is open for public inspection. A Fourth Amendment waiver of an absent co-tenant is not the same as an invitation by that same co-tenant to law enforcement to search their home. Instead of extending and applying a rigid rule to this context, Fourth Amendment standards of reasonableness, incorporating community norms, should be applied to the facts of this case.

What's more is that the seizure of Harden prior to the search diminished any reasonable opportunity that Harden might have otherwise had to object, if a verbal objection is required at all. While there is case law holding that silence may be a waiver of one's right to object to a search authorized by a roommate, this case is different because Harden was arrested prematurely and was without a full opportunity to object once it became clear that law enforcement intended to search the entire home. A holding that law enforcement may take advantage of a probationer's diminished constitutional rights to search a roommate's private spaces without the present roommate's consent will give officers an unfair opportunity to deprive people housing probationers of the constitutional rights enjoyed by everyone else. Under the standards of reasonableness applicable to the Fourth Amendment, the search of Harden's home, at least with respect to her, was unreasonable, and the evidence seized should have been suppressed.

## ARGUMENT AND CITATION OF AUTHORITY

The diminished constitutional rights of Lakesia's Harden's roommate, a probationer, must not be used to diminish Harden's rights. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures, shall not be violated." U.S. CONST. AMEND. IV. A person with a subjectively and objectively reasonable expectation of privacy to an area searched by the government has standing to object to a search on the basis that the search violated the Defendant's Fourth Amendment rights against unlawful search and seizure. Katz v. United States, 389 U.S. 347, 361 (1967).

**1)** **Did the district court err in denying Harden's motion to suppress evidence seized during a warrantless search of her home, said search being based solely on her co-tenant's probation Fourth Amendment waiver, when Harden occupied the home during the police encounter and did not consent to the search?**

The district court erred when it denied Harden's motion to suppress [Doc. 44] since 1) Harden had not consented or otherwise waived her right to be free of excessive searches and seizures, and 2) law enforcement unlawfully relied solely on a general Fourth

15

Amendment waiver of a co- tenant to search Harden's home when she was present and did not consent to the search. 3) Even if there normally would be an obligation for Harden to have verbally objected to a search, law enforcement's seizure of Harden prior to the search limited her right to object, and the search of her home was objectively unreasonable under a Fourth Amendment analysis. For either of these reasons, the district court's denial of Harden's motion to suppress must be reversed.

### a. Harden had not consented or otherwise waived her right to be free of excessive searches and seizures.

In the absence of a well-established exception, a warrantless search is unconstitutional. <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967) ("'[T]he mandate of the [Fourth] Amendment requires adherence to judicial processes,' and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.") "Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause,' for the Constitution

requires 'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police . . . '" Id. (internal citations omitted).   Here, the relevant search of Defendant Harden's residence was conducted without a warrant. Rather than being based on authority of a warrant,  it was apparently based on the understanding of the police officer that another resident of the house was subject to warrantless searches by virtue of his probation conditions. Linder's probation conditions contained a Fourth Amendment waiver, which is akin in some ways to consent to search, but is also not the same as a particularized permission to search a given area. Harden, however, did not consent to the search by any measure.

Unlike a regular citizen, such as Harden at the relevant time, "[i]nherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" United States v. Knights, 534 U.S. 112, 119 (2001)(quoting Griffin v. Wisconsin, 483 U.S. 868, 874 (1987); Morrissey v. Brewer, 408 U.S. 471, 180 (1972)). Supervision of a probationer has been determined to justify an infringement on the probationer's privacy which would otherwise be

17

unconstitutional if applied to the public at large. <u>Griffin</u>, 483 U.S. at 875. As the report and recommendation [Doc. 69] adopted by the court below found, it may well be that Linder himself, as a probationer with a Fourth Amendment waiver, was ordinarily subject to a warrantless search of his home when reasonable suspicion existed. Yet, Harden was not a probationer, and the reasoning that the search was valid as to Linder because of his probationary status should not be transferred to Harden.

Another of the means by which law enforcement might lawfully conduct a warrantless search is by virtue of receiving voluntary consent from the interested party. <u>United States v. Purcell</u>, 236 F.3d 1274, 1281 (11th Cir. 2001). The government must show that consent was freely and voluntarily given, not the result of acquiescence to a claim of lawful authority. <u>Florida v. Royer</u>, 460 U.S. 491, 497 (1983). Also important is that the failure to object to a search does not amount to consent to a search. <u>Bashir v. Rockdale County, Ga</u>, 445 F.3d 1323, 1329 (11th Cir. 2006). The scope of a consensual search is determined by the terms of the actual consent. <u>United States v. Martinez</u>, 949 F.2d 1117, 1119 (11th Cir. 1992). "The government may not exceed the boundaries of the

consent, and any evidence gathered beyond those boundaries must be excluded." Id. Here, Defendant Harden's consent to the law enforcement officers entering her front door was not consent to search her house. The search of her bedroom, closet, and bag therefore far exceed the scope of the very limited consent granted by Defendant Harden. There being no search warrant, no consent given, and no Fourth Amendment waiver by Harden, the only possible justification for the search of the home in this case was Linder's Fourth Amendment waiver, which is the justification provided by law enforcement. As the police officer admitted, were it not for Linder's probation conditions, he "would have secured everyone there and went and typed a search warrant." [Doc. 73, page 28]

**b. Law enforcement unlawfully relied solely on a general Fourth Amendment waiver of a co-tenant to search Harden's home when she was present and did not consent to the search.**

Regardless of whether her co-tenant was subject to a Fourth Amendment waiver by virtue of his probation conditions, Harden's consent to the search was required because she was present at the home, and Linder had not specifically consented to the search of

Harden's closet on the date in question. It is well established that an owner or lessee of a residence has a reasonable expectation to privacy in their home residence and has standing to seek suppression of evidence seized in a warrantless search of their home. United States v. Eyster, 948 F.2d 1196, 1209 (11th Cir. 1984). Does this principle of law change when the home occupant lives with someone on probation? This question must be answered by reference to whether there is both a subjective and an objectively reasonable expectation of privacy in the place searched. See Katz v. United States, 389 U.S. 347, 361 (1967)(Harlan J. concurring). Objectively, there is not much question that American society places a great privacy interest in the home. The word "houses" is specifically mentioned in the Fourth Amendment as being protected. U.S. CONST. AMEND. IV. Subjectively, Harden certainly expected the location where the contraband in this case was found, a personal bag in her closet and out of plain sight, to have been private. Again, Linder's Fourth Amendment waiver does not contain any indication that Harden was a party to the waiver. [Doc. 66-2; Doc. 66-3] Further, while the record indicates that Harden knew Linder was on probation, nothing indicates that she ever expressly agreed that her

20

home was open to searches on demand. Given this undisputed initial expectation of privacy, the district court's denial of Harden's motion to suppress must presuppose that Harden's expectation of privacy was in fact unreasonable given Linder's independently entered Fourth Amendment waiver. If such presupposition is true, it means that the roommates of probationers are in large part second class Americans without the privilege of protection against warrantless and nonconsensual searches of their homes, regardless of whether they agreed to or were even aware of the probationer roommate's conditions.

While the precise issue on this appeal has not apparently been decided in any decision binding on this Court, a point acknowledged by the district court in the report and recommendation, [Doc. 69, page 12] it is established that a present occupant like Harden does at a minimum have a right to object to searches authorized by a roommate. Georgia v. Randolph, 547 U.S. 103, 122-23 (2006) "A physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." Id. In Randolph, a wife authorized law enforcement to search a home shared with her husband for cocaine. Law enforcement asked the husband for

21

consent, but he refused. Despite his refusal, law enforcement followed

the wife to a location within the house where they obtained evidence

used to indict the husband for possession of cocaine. The husband

sought suppression of the evidence due to his refusal of consent. Id. at

107. Considering these facts, the Supreme Court of the United States

weighed "widely shared social expectations" in assessing the

reasonableness of the underlying search. Id. at 111. Citing United

States v. Matlock, 415 U.S. 164 (1974), the Court notes that a person's

sharing of a home with a co-tenant poses an inherent risk that the co-

tenant might let someone in to search the home in the person's absence.

Randolph, 547 U.S. at 111. In the absence of any objection and any

other present tenant, a visitor may customarily rely on the present

tenant's invitation to enter otherwise private areas. However, it would

be an intrusion to enter if the second tenant was present and objected

to entry. Id. at 113. Applying these customary expectations to the

context of law enforcement, the Court held that the search was

unreasonable in the face of an objecting occupant. Id. at 114-115 ("Since

the co-tenant wishing to open the door to a third party has no

recognized authority in law or social practice to prevail over a present

22

and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all.")

One key difference in this case from <u>Randolph</u>, as the district court pointed out, is that Harden never voiced a verbal objection to the search of her home by law enforcement. [Doc. 77, page 2] The district court cited to <u>United States v. Watkins</u> as precedent that <u>Randolph</u>'s exception to the general rule of <u>Matlock</u> requires express refusal to a search authorized by a co-tenant and that silence cannot be a substitute to refusal. 760 F.3d. 1271, 1283 (11th Cir. 2014). In fact, it has not been uncommon for courts to view <u>Randolph</u> as a very narrow exception to the general rule that law enforcement may rely on the consent of a single co-tenant to search a shared home. Under these holdings, a present and objecting co-tenant is an indispensable prerequisite to relying on <u>Randolph</u>. <u>See</u>, <u>e.g.</u>, <u>United States v. Harris</u>, 526 F.3d 1334, 1339 (11th Cir. 2008); <u>United States v. Delancy</u>, 502 F.3d 1297, 1307-08 (11th Cir. 2007); <u>United States v. Shrader</u>, 675 F.3d 300, 306-07 (4th Cir. 2012); <u>United States v. Cooke</u>, 674 F.3d 491, 499 (5th Cir. 2012); <u>United States v. Henderson</u>, 536 F.3d 776, 783 (7th Cir.

23

2008) (holding that "the contemporaneous presence of the objecting and consenting co-tenants [w]as indispensable to the decision in Randolph "); United States v. Hudspeth, 518 F.3d 954, 960 (8th Cir. 2008). None of these opinions which have limited application of Randolph, however, have apparently considered facts likes those in this case where there was not a co-tenant who actually invited law enforcement to the place searched.

Although there is not an Eleventh Circuit case which apparently raised the question of whether a present tenant must express vocal objection to a probation search of a roommate, the district court cited as persuasive authority a Tenth Circuit case, United States v. Blake, 284 F. App'x 530, 535-37 (10th Cir. 2008), with somewhat similar facts. [Doc. 69, page 13] In Blake, law enforcement officers had an arrest warrant for a probationer, and the probationer's husband allowed them to come into the house and led them to his wife's bedroom, where the officers saw baggies of methamphetamine "in plain view on a dresser." Blake, 284 F. App'x at 532. The search continued from there, and the husband never objected to the continued search, which was a point relied upon by the Tenth Circuit to apply Randolph and affirm denial of a motion

24

for summary judgment that the husband filed after he was charged with the controlled substances crime. Blake, 284 F. App'x at 537. Beyond the fact that Blake is not binding on this Court, there are key facts in Harden's case which distinguish it. In Blake, the co-tenant of the probationer walked the officers to the location of the drugs, and the officers could see the drugs in plain site. Id. at 532. In this case, however, Harden invited officers into her living room, but the officers went further and showed themselves to her bedroom and went through her belongings without any invitation from Harden. [Doc. 73, pgs 25-26] In fact, officers forced Harden to sit on a couch before searching, a fact discussed below. While it may be reasonable under social customs to follow the occupant of a house to a bedroom, as in Blake, under no objectively reasonable custom is it acceptable to go into someone's closet just because their co-tenant is a probationer.

Randolph provides a number of guiding principles and helpful reasoning for applying the Fourth Amendment in this case, and the fact that Harden did not verbalize an objection should not cut off the analysis. At the center of Randolph, as in Katz, is consideration of reasonableness in the context of "widely shared social expectations."

25

Randolph, 547 U.S. at 111. In this case, the consent provided by Linder was more a legal fiction as the result of his probation status rather than actual consent to go search his girlfriend's closet. While a tenant might assume the risk that a co-tenant could invite a third party guest into the house and provide permission to rummage through their private areas, it is not widely assumed that a roommate's status as being a probationer makes all of one's belongings fair game for a search at any time without actual concurrent permission to search by the supervised roommate. The Court in Randolph did not consider a situation like Harden's and neither apparently have other courts which have limited the reasoning of Randolph. Randolph is important to consider because it establishes that there is at least one exception to a general rule that a co-tenant may provide consent to search a common area, but in the end Randolph, like Katz and its progeny, holds that reasonableness is the ultimate determinant in a Fourth Amendment analysis.

Here, Harden was a present occupant during the house search, and Linder was not present nor had anyone spoken to him about the search. Any reasonable person would have asked Harden for consent to

26

search in this situation. If she had refused, the police officer could have gotten a search warrant just as he suggested in his testimony. [Doc. 73, page 28] Yet, he did not ask for permission to search, nor did he get a search warrant. Even the officers in <u>Randolph</u> asked for the husband's permission to search his house. <u>Randolph</u>, 547 U.S. at 107. Whether Harden verbalized an objection or not, under reasonable and objective social norms, her consent was required to search the protected space of her closet. Because the search was unreasonable under the totality of the circumstances, the evidence seized from Harden's home should have been suppressed.

**c. Even if in some cases there is an obligation for a co-tenant to have verbally objected to a search, law enforcement's seizure of Harden prior to the search limited her ability to object, and the search of her home was objectively unreasonable under a Fourth Amendment analysis.**

When Harden was forced to sit on her couch and was not free to leave, she was in effect seized or arrested. A seizure or detention occurs within the definition of the Fourth Amendment when "a reasonable person would have believed that he was not free to leave." <u>I.N.S. v. Delgado</u>, 466 U.S. 210, 215 (1984). By the arresting officer's admission,

27

Harden was arrested at the time she was forced to sit on her couch. [Doc. 73, page 28] It was after this seizure that the police officer commenced his search of the house. The district court determined in error that even if Harden was arrested, she was still required to object to a search if she did not consent to it. [Doc. 77, pages 2-3] The district court cited United States v. Telcy, 362 F. App'x 83, 86-87 (11th Cir. 2010) as authority that an arrested person can provide consent to a search. [Doc. 77, page 2-3] Telcy is a very different case because the officers asked Telcy for consent, Telcy, 362 F. App'x at 86, unlike in this case where Harden was not asked.

It is well recognized that being seized raises the stakes for the person being detained, and analysis of one's rights under the Fourth Amendment often changes. In fact, it is at the point of seizure that facts surrounding an arrest or search invite higher scrutiny under the Fourth Amendment. See United States v. Jordan, 635 F.3d 1181, 1185-86 (11th Cir. 2011). For example, this is evident in the well established holding in Miranda v. Arizona that once a person is deprived of their liberty no statement they make can be used against them unless they are warned of this fact. 384 U.S. 436, 476-477 (1966).

28

Certainly if an arrested person must be warned that their words will be held against them before their words carry any weight of admissibility, there must be some adjustment to any obligation that an arrested person has to voice an objection to stop what appears to be an inevitable search. In fact, a reasonable person who has been seized would likely at that point become fully cognizant that their words will be used against them and choose to be silent. Here, law enforcement admitted that Harden was seized, rightly or wrongly, during the time when she could have objected to a search of her home based on Linder's Fourth Amendment waiver. [Doc. 73, page 28] Having been in effect arrested at the relevant time, it is inequitable to hold her to the same standard as the defendant in <u>Randolph</u>, who refused consent after being asked for consent and when he was not in custody. Further, she was advised after being seized that law enforcement would search the home under the authority of Linder's probation conditions. "[W]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search." <u>Bumper v. North Carolina</u>, 391 U.S. 543, 550 (1968). Here, even though the unrebutted evidence was that law enforcement had

29

detained Harden and then announced they had a right to search, the district court determined that consent was irrelevant and placed the burden on Harden to object to a search. Under the umbrella of being arrested and not being asked for consent, it seems objectively unreasonable under Fourth Amendment principles to demand someone in Harden's shoes to voice an objection in order to avoid a search of her home.

Even <u>Randolph</u> qualified the limited rule requiring clear objection to consent, explaining that the clear rule was practical "[s]o long as there is no evidence that the police have removed the potentially objecting tenant for the sake of avoiding a possible objection." <u>Randolph</u>, 547 U.S. at 121-22. In this case, the police accomplished a removal of the potential objector by detaining Harden prior to the search. No reasonable guest in a home would force someone to sit on a couch while they looked around their bedroom without permission. To avoid this trespass, the police could have easily asked Harden for permission to search, or they could have gotten a search warrant. They did neither, making the search constitutionally unreasonable.

**2)    Did the district court err in denying Harden's motion to suppress her custodial statements provided to law enforcement following her arrest based on controlled substances found in her home, given that said evidence was unlawfully seized?**

Because the evidence which justified Harden's arrest and charges for the underlying drug crime was the product of an unlawful search, the district court erred in not suppressing from the admissible evidence the statements made to law enforcement shortly thereafter. A confession or statement that the police obtain as the result of confronting a suspect with evidence from an illegal search must be suppressed. United States v. Timmann, 741 F.3d 1170, 1182 (11th Cir. 2013). Relevant factors for determining whether a behavior or confession was the result of an illegal police action "include the temporal proximity of the arrest and the defendant's response, the presence or absence of intervening circumstances, and the purpose and flagrancy of the official misconduct." United States v. Bailey, 691 F.2d 1009, 1015 (11th Cir. 1982).

Here, it would be difficult to separate the custodial statements of Defendant Harden from the illegal search of her residence and her immediately resulting arrest. The statements against her interest

31

which she made during the custodial interrogation were approximately

three hours after her arrest for trafficking controlled substances. [Doc.

173, page 107] There was no intervening event to remove the taint from

the statements. These statement were treated as a confession at trial,

[Doc. 173, page 113] but they should have been suppressed because the

statements were fruit of the unlawful search of Harden's home.

Therefore, the district court should be reversed.

## CONCLUSION

Lakesia Harden did not provide consent to a search of her

bedroom which resulted in the seizure of controlled substances relied

upon to convict her of a federal crime for which she is currently

imprisoned. Neither did law enforcement have a search warrant for

said search. She just happened to have a roommate on probation.

Because it is objectively unreasonable to search someone's bedroom

when they are present and have not provided consent for the bedroom

to be searched, the search in this case should have been suppressed.

Alternatively, even if a co-tenant's probation condition of a Fourth

Amendment waiver is determined to be equivalent to a co-tenant's

invitation to search a space, Harden's seizure was a removal of her

ability to object to the search, which itself was a violation of Harden's

right to be free of excessive search and seizure. Because of either of

these inherent Fourth Amendment violations, the district court erred in

denying Harden's motion to suppress the evidence seized from her

home. The district court further erred in denying Harden's motion to

suppress her statements which were the fruit the unlawful search and

seizure. This Court should accordingly reverse the judgment below.

Respectfully submitted this 12th day of February, 2021.

S/ Daniel J. O'Connor

Daniel J. O'Connor

GA BAR NO. 216133

Attorney for Lakesia L. Harden

Bryant O'Connor LLP
P.O. Box 28
502 Jackson Street
Vidalia, GA 30475
912-537-9021 (P)
912-537-3807 (F)
djo@bryantoconnor.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-column limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6972 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect X5 in Century Schoolbook 14 point font.

This 12th day of February, 2021.

S/ Daniel J. O'Connor
Daniel J. O'Connor
GA BAR NO. 216133
Attorney for Lakesia L. Harden

Bryant O'Connor LLP
P.O. Box 28
502 Jackson Street
Vidalia, GA 30475
912-537-9021 (P)
912-537-3807 (F)
djo@bryantoconnor.com

34

CERTIFICATE OF SERVICE

Today I served a copy of this Brief of the Appellant on the government by filing it on the Court's CM/ECF portal, which generates a notice of electronic filing that is delivered to all counsel of record, along with a link to retrieve a file-stamped copy of the document that I filed.

This 12th day of February, 2021.

S/ Daniel J. O'Connor
Daniel J. O'Connor
GA BAR NO. 216133
Attorney for Lakesia L. Harden

Bryant O'Connor LLP
P.O. Box 28
502 Jackson Street
Vidalia, GA 30475
912-537-9021 (P)
912-537-3807 (F)
djo@bryantoconnor.com