**No. 20-14004**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA**,

Plaintiff-Appellee,

v.

**LAKESIA L. HARDEN,**

Defendant-Appellant.

On Appeal from the United States District Court
for the Southern District of Georgia

**BRIEF OF APPELLEE
UNITED STATES OF AMERICA**

DAVID H. ESTES
ACTING UNITED STATES ATTORNEY

Justin G. Davids
Assistant United States Attorney
United States Attorney's Office
Post Office Box 8970
Savannah, GA 31401
(912) 652-4422

No. 20-14004

United States v. Harden

## **CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

COMES NOW the United States of America, by and through David H. Estes, Acting United States Attorney for the Southern District of Georgia, and files its Certificate of Interested Persons and Corporate Disclosure Statement as follows:

Bowen, Jr., Hon. Dudley H., Senior United States District Court Judge

Christine, Bobby L., former United States Attorney

Davids, Justin G., Assistant United States Attorney

Epps, Hon. Brian K., United States Magistrate Judge

Estes, David H., Acting United States Attorney

Harden, Lakesia Lashea, Appellant

Marchman, Jr., Capt. Michael A., former Special Assistant United States Attorney

O'Connor, Daniel James, Attorney for Appellant

Rafferty, Brian T., former Assistant United States Attorney

Syms, Jr., Henry (Hank) W., Assistant United States Attorney

No. 20-14004
United States v. Harden

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is unnecessary in this case. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...................................................... C-1

STATEMENT REGARDING ORAL ARGUMENT .................................... i

TABLE OF CONTENTS ............................................................ ii

TABLE OF CITATIONS ........................................................... iv

JURISDICTION .................................................................... 1

ISSUES ........................................................................... 1

STATEMENT OF THE CASE .................................................... 1

    I.    Facts ..................................................................... 1

    II.   Procedural History. ................................................... 7

    III.  Standards of Review. ............................................... 10

SUMMARY OF ARGUMENT .................................................. 10

ARGUMENT ...................................................................... 11

    The district court did not err when it determined that
    the warrantless search of Harden's residence was lawful
    where the search was based on the cotenant's probation
    search condition and where Harden did not affirmatively
    object to the search. ................................................ 11

    A.    Harden waived her challenge that she was required
            to affirmatively object to the search of the residence
            because she failed to object to the magistrate court's
            report and recommendation on that point. ........................... 12

B.    Linder provided consent to search the residence based on his probation search waiver, and Harden was required to affirmatively object to the search where she was aware of the existence of the search waiver and that officers intended to search the residence. ............................................................ 17

C.    The district court did not clearly err in finding that law enforcement did not threaten, coerce or otherwise unlawfully cause Harden to not affirmatively object to the search. ......................................... 26

CONCLUSION ......................................................................................... 29

CERTIFICATE OF COMPLIANCE AND SERVICE ............................. 31

# <u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

## <u>Cases</u>

*Barajas v. City of Rohnert Park*, 159 F. Supp. 3d 1016
    (N.D. Cal. 2016) ................................................................... 25

*Barber v. Corizon Health*, No. 15-997, 2018 WL 1579472
    (N.D. Ala. Mar. 30, 2018) ................................................... 18

*Brownback v. King*, 141 S. Ct. 740 (2021) .............................................. 18

*Donald v. State*, 903 A.2d 315 (Del. 2006) ............................................. 24

*Illinois v. Rodriguez*, 497 U.S. 177 (1990) ............................................. 18

*L'Amoreux v. Vischer*, 2 N.Y. 278 (1849) ............................................... 22

*Randolph v. Georgia*, 547 U.S. 103 (2006) ..................................... passim

*Taylor v. Brontoli*, No. 04-487, 2007 WL 1359713
    (N.D.N.Y. May 8, 2007) ..................................................... 25

*Thornton v. Lund*, 538 F. Supp. 2d 1053 (E.D. Wis. 2008) .................... 25

*United States v. Blake*, 284 F. App'x  (10th Cir. 2008) .............. 22, 23, 24

*United States v. Burwell*, 763 F. App'x 840 (11th Cir. 2019) ................. 28

*United States v. Carter*, 566 F.3d 970 (11th Cir. 2009) ......................... 21

*United States v. Carter*, No. 05-349, 2006 WL 8447030
    (D. Utah Apr. 14, 2006) ..................................................... 24

*United States v. Delancy*, 502 F.3d 1297 (11th Cir. 2007) ............... 20, 29

*United States v. Harris*, 526 F.3d 1334 (11th Cir. 2008) ....................... 20

*United States v. Holt*, 777 F.3d 1234 (11th Cir. 2015)...........................16

*United States v. Isaac*, 987 F.3d 980 (11th Cir. 2021) ...........................10

*United States v. Linder*, No. CR 319-003, 2019 WL 3554668
    (S.D. Ga. Aug. 5, 2019)...................................................8, 9, 15, 27

*United States v. Linder*, No. CR 319-003, 2019 WL 3560520
    (S.D. Ga. June 21, 2019) ...............................................................8

*United States v. Matlock*, 415 U.S. 164 (1974).................................18, 20

*United States v. Mercer*, 541 F.3d 1070 (11th Cir. 2008)......................19

*United States v. Morales*, 893 F.3d 1360 (11th Cir. 2018)....18, 19, 20, 22

*United States v. Perkins*, 787 F.3d 1329 (11th Cir. 2015) ...............15, 16

*United States v. Ramierez-Chilel*, 289 F.3d 744 (11th Cir. 2002) ....27, 28

*United States v. Savage*, 459 F.2d 60 (5th Cir. 1972) ...........................28

*United States v. Spivey*, 861 F.3d 1207 (11th Cir. 2017) .......................28

*United States v. Steward*, 880 F.3d 983 (8th Cir. 2018) ........................18

*United States v. Telcy*, 362 F. App'x 83 (11th Cir. 2010) .......................27

*United States v. Thomas*, 818 F.3d 1230 (11th Cir. 2016)...............18, 20

*United States v. Watkins*, 760 F.3d 1271 (11th Cir. 2014) ...............10, 20

## **Statutes**

18 U.S.C. § 3742.................................................................................1

21 U.S.C. §§ 841(a)(1) ........................................................................7

28 U.S.C. § 1291.................................................................................1

## **Rules**

11th Cir. R. 25-3(a) ..........................................................................31

Fed. R. App. P. 25(d) ........................................................................31

Fed. R. App. P. 32(a)(5) ....................................................................31

Fed. R. App. P. 32(a)(6) ....................................................................31

Fed. R. App. P. 32(a)(7)(B) ...............................................................31

Fed. R. App. P. 34(a)(2)(C) ..................................................................i

Fed. R. Crim. P. 49 ...........................................................................16

## STATEMENT OF JURISDICTION

This Court has jurisdiction over appeals of a district court's final order, under 28 U.S.C. § 1291, and over criminal sentences, under 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUE

Did the district court did err when it determined that the warrantless search of Harden's residence was lawful where the search was based on the cotenant's probation search condition and where Harden did not affirmatively object to the search?

## STATEMENT OF THE CASE

### I.    Facts.

In March 2016, Tremayne Linder was sentenced in state court to a 20-year probated sentence for burglary and criminal attempt to commit armed robbery.[1] (Doc. 56-1.)  Linder's original conditions of probation did not contain a Fourth Amendment waiver and consent to warrantless

---

[1] Because the underlying facts are not particularly in dispute, the government generally cites to the facts as found by the magistrate court (Doc. 69 at 1-5), particularly those relating to Sergeant Roland's body camera (Doc. 44-5).

search of his home.  (Doc. 56-1; Doc. 46-2; Harden App'x 91.)  As a result of a probation violation, however, Linder's probation officer asked him to sign a search waiver in exchange for not being revoked before a judge. (Harden App'x 77-80, 83-84.)    That waiver—signed by Linder, his probation officer, and the state court judge—stated:

> Probationer shall submit to a search of his (her) person, residence, papers, vehicle, and/or effects as these terms of the Fourth Amendment to the United States Constitution are defined by the Courts, any time of the day or night with or without a search warrant whenever requested to do so by a Probation Supervisor or any law enforcement officer and specifically consents to the use of anything seized as evidence in a judicial or disciplinary proceeding.

(*Id*. at 84; Doc. 56-3.)  Linder was also required to permit his probation officer to visit him at home.  (Doc. 56-3.)

On April 5, 2018, a state court judge issued an arrest warrant for Linder because he failed to attend mandatory drug reporting center (DRC) program meetings.  (Doc. 56-4.)  Dublin Police Department Sergeant Eric Roland and Georgia Probation Officer Timothy Ray went to Linder's residence on April 9, 2018, to serve Linder's arrest warrant.[2]

---

[2] Probation Officer Ray had met with Linder and Harden several times previously at this residence.  (Harden App'x 85.)

(Harden App'x 49-50, 75, 85, 86.)  Harden met Officer Ray at the door. (*Id*. at 50.)  As Sergeant Roland approached, he immediately smelled a very strong marijuana odor.  (*Id*.)  The officers asked Harden if she knew where Linder was; Linder was not at the apartment and Harden thought he was at his mandatory DRC meeting.  (*Id*. at 51, 52; Doc. 44-5 (00:00-03:00)[3].)  Officer Ray made a phone call and confirmed that Linder was not at the DRC meeting, which he then told Harden.  (Doc. 44-5 (01:30-05:00).)  Harden then invited Sergeant Roland and Officer Ray inside the residence to look for Linder, telling them "you can come look if you want to."  (*Id*.; Harden App'x 51, 65, 66, 87.)  Sergeant Roland asked if they could come inside, and Harden agreed they could.  (Harden App'x 51.) The odor of marijuana was so strong that Officer Ray was hesitant to even enter the residence.  (*Id*. at 53, 87-88; Doc. 44-5 (00:30-01:30).)

Harden and her child, along with her sister, were inside the residence in the foyer area.  (Harden App'x 51, 52, 66; Doc. 44-5 (00:30-01:30).)  Her sister was visiting from Atlanta and had spent the night there.  (Harden App'x 52; Doc. 44-5 (03:00-04:00).)  Harden lived at the

---

[3] The parenthetical to Doc. 44-5 refers to the time associated with the body cam video.

3

residence with Linder, and they shared a bedroom.  (Harden App'x 52)
Once inside the residence, Sergeant Roland noticed the "very, very
pungent odor" of marijuana, which he described as "probably the
strongest smell I've smelled inside of a residence since I've been working
in policing."  (*Id*. at 52-53.)   Based on his training and experience,
Sergeant Roland could tell it was "green," rather than burnt, marijuana.
(*Id*. at 54.)   Sergeant Roland asked Harden, "Since [Linder] has search
conditions is there anything in here we need to know about?" (Doc. 44-5
(02:00-03:00); Harden App'x 54.)   Harden said, "No." (*Id*.)   Sergeant
Roland told her it smelled like marijuana, and Harden claimed that the
night before a friend smoked marijuana at the residence.  (*Id*.)  At that
point, Harden's sister attempted to leave the room, but Sergeant Roland
asked her to remain seated because "we're probably about to conduct a
search on this residence." (Doc. 44-5 (02:30-03:00); Harden App'x 53, 54-
55.)

Sergeant Roland confirmed with Officer Ray that Linder had search
conditions related to his probation.  (Harden App'x 53, 67, 88; Doc. 44-5
(01:30-02:30; 05:00-7:00).)   Officer Ray called his supervisor to confirm
Linder's search conditions, and Sergeant Roland also spoke with Officer

4

Ray's supervisor, asking if they could proceed with the search.  (Harden App'x 53, 67, 69; Doc. 44-5 (05:00-07:00).)  Officer Ray's supervisor agreed Linder's residence could be searched.  (Harden App'x 53.)  Sergeant Roland went back inside the residence and, while standing in the living room in front of Harden, announced into his radio his intent to search the residence based on Linder's probation search condition.  (Doc. 44-5 (06:30-06:50).)  With this, officers began to search the residence.  (Harden App'x at 55.)

At some point, Sergeant Roland said to Harden, "If you can, just have a seat right here [on the couch] for me."  (*Id*. at 67.)  Harden was not free to leave.  (*Id*. at 68.)  Harden was not hostile and did not appear to be under any type of duress or under the influence.  (*Id*.)  At no point did Harden voice any objection to the search.  (*Id*. at 55, 61; Doc. 44-5 (06:45-10:00).)  Officers did not specifically ask Harden if they could search the residence.  (Harden App'x at 68.)

Due to the marijuana's strong smell, within about 30 seconds of searching, Sergeant Roland found the marijuana, as well as methamphetamine, in Harden and Linder's bedroom closet.  (*Id*. at 55-56, 57, 64, 70; Doc. 44-5 (06:45-10:00).)  The marijuana and

5

methamphetamine were contained in a backpack stored in a camouflage tote on the top shelf of the closet. (Harden App'x 56, 57.) The drugs were individually packaged in 12 bundles, all wrapped in black electrical tape. (*Id.*; Doc. 44-5 (06:30-10:00).) Sergeant Roland explained that he used to work in the prison system, and that he "immediately suspected that they were intending to go into the prison system based on how they were packaged in that electrical tape." (Harden App'x at 56, 57.) Also inside the tote "was packages of synthetic hair that women wear" and dryer sheets. (*Id.* at 57.) In Harden and Linder's bedroom, officers found uniform shirts with Harden's name and that said "CCA, Wheeler County Correctional Institute," which was where Harden worked.[4] (*Id.* at 58, 64; Doc. 44-5 (06:30-10:00).) They also discovered her military ID on the nightstand. (Harden App'x 58.) Men's clothes were in the bedroom. (*Id.* at 70.) In a small television room/game room, officers located a shelf on which there was a Rubbermaid bowl containing a Crown Royal bag—inside was marijuana. (*Id.* at 59.) On top of that same shelf was a stolen firearm. (*Id.*)

---

[4] The other bedroom in the residence appeared to belong to a child. (Harden App'x at 64.)

6

After finding the drugs, Sergeant Roland went back and arrested Harden, placed her in handcuffs, and read Harden her *Miranda* rights. (*Id*. at 59.)  Harden and her sister denied knowing anything about the contraband.  (*Id*.)  During the search, Linder arrived home and was arrested in the front yard.  (*Id*. at 60.)  Although he initially denied knowing about the drugs, he eventually claimed they were his.  (*Id*.)

Subsequently, Harden was interviewed by law enforcement.  (*Id*. at 70-71.)  She did not admit to the drugs.  (*Id*. at 71.)

## II.    Procedural History.

The grand jury charged Harden and Linder with possession with intent to distribute marijuana and 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  (Doc. 1; PSR ¶ 1.)  Harden and Linder moved to suppress the evidence seized from their apartment, as well as Harden's subsequent statements. (Docs. 45, 46.)  After an evidentiary hearing, the magistrate court issued a report and recommendation denying the defendants' motions to suppress, holding that the search of the residence was appropriate because Linder's terms of probation included a Fourth Amendment waiver and Harden did not affirmatively object to the

search.  (Docs. 65, 69.)  *See United States v. Linder*, No. CR 319-003, 2019 WL 3560520 (S.D. Ga. June 21, 2019).  The magistrate court rejected Harden's contention that, even if she were required to affirmatively object, her ability to do so was overborne by the circumstances of her detention.  (Doc. 69 at 14-15.)  *See Linder*, 2019 WL 3560520, at *6-*7.  Finally, the magistrate court held that "Harden's motion to suppress statements made after her arrest fails because it is entirely dependent on the motion to suppress evidence found during the search."  (Doc. 69 at 15.)  *See Linder*, 2019 WL 3560520, at *7.

Harden objected to the magistrate judge's report and recommendation as to the issue of whether her ability to object was "significantly curtailed" by "the surrounding circumstances of there being multiple law enforcement officers present who were unconditionally declaring that they would conduct a search."  (Doc. 71 at 2-3.)  The district court adopted the magistrate court's report and recommendation.  (Doc. 77.)  *See United States v. Linder*, No. CR 319-003, 2019 WL 3554668 (S.D. Ga. Aug. 5, 2019).  The district court explained:

> The thrust of Defendant Harden's objections concerns the R&R's explanation that, immediately prior to Sergeant Eric Roland conducting the search of Defendants' home, Defendant

Harden's sister, Tamara Harden, "attempted to leave the room, and Sergeant Roland requested she remain seated in the living room because 'we're probably about to conduct a search on this residence.' " (Doc. no. 69, p. 4.) Defendant Harden points to the R&R's omission of the fact that, on cross examination, Sergeant Roland testified both Tamara Harden and Defendant Harden were not free to leave at that moment. (See doc. no. 73, p. 28; doc. no. 74, pp. 2-3.) Defendant Harden argues this fact is critical because, when considered along with the totality of the circumstances, it establishes she was in custody at the time of the search and Sergeant Roland's conduct "significantly curtailed her ability to object...." (Doc. no. 74, p. 2.) The Court disagrees.

*Linder*, 2019 WL 3554668, at *1. Thus, "Defendant Harden had every opportunity to voice an objection to the search but did not. This Court concludes, as did the Magistrate Judge, she was not cowed into silence by police harassment, intimidation, or coercion. Instead, her decision to remain quiet and allow the search to occur was voluntary." *See id*. at *2.

Linder eventually pled guilty to a lesser-included charge. (Docs. 99-101.) Harden, though, was convicted at trial. (PSR ¶ 3; Doc. 115.) The presentence investigation report calculated a total offense level of 34 and a criminal history category of I, resulting in an advisory guidelines range of 151 months' to 188 months' imprisonment. (PSR ¶¶ 25, 29, 51.) Prior to sentencing, Harden entered into a limited waiver of appeal that allowed her to challenge the district court's denial of her suppression

9

motion.  (Doc. 144.)  At sentencing, the district court varied downward, sentencing Harden to 120 months' imprisonment.  (Doc. 163.)

Harden filed a timely notice of appeal. (Doc. 165.)

## III.  Standards of Review.

In reviewing a district court's ruling on a motion to dismiss, this Court reviews findings of fact for clear error, but reviews de novo the application of the law to those facts.  *United States v. Isaac*, 987 F.3d 980, 988 (11th Cir. 2021).  "In reviewing the district court's denial of a motion to suppress, we must take the facts in the light most favorable to the Government."  *United States v. Watkins*, 760 F.3d 1271, 1279 (11th Cir. 2014).

## SUMMARY OF ARGUMENT

Harden failed to object to that part of the magistrate court's report and recommendation finding that, under *Randolph v. Georgia*, 547 U.S. 103 (2006), she was required to affirmatively object to law enforcement's search of the residence which was based on her cotenant's probation conditions.  As such, she has waived this argument.  Even if not waived, however, the lower court did not err in concluding that Harden's failure

to affirmatively object to the search precluded suppression of the evidence against her. Finally, there is no evidence supporting that Harden's will was overborne or that she was coerced into not objecting to the search. For these reasons, this Court should affirm the district court's decision.

## ARGUMENT

**The district court did not err when it determined that the warrantless search of Harden's residence was lawful where the search was based on the cotenant's probation search condition and where Harden did not affirmatively object to the search.**

In her brief, Harden lists two points on appeal: whether the district court erred in finding the search of her residence lawful based on Linder's probation search waiver; and whether the district court erred in failing to suppress her custodial statements as fruit of the poisonous tree. (Harden Br. 12.) Her first point on appeal, though, raises two separate issues: (1) Linder's probation search waiver was not applicable to Harden and she was not required to affirmatively object to the search of the residence (*id*. at 25-37); and (2) even if her affirmative consent was not required, her ability to object was overborne by the circumstances (*id*. at

11

37-40). Because Hardin did not object to the magistrate court's report and recommendation on the issue of whether she was required to affirmatively object to the search of the residence, she has waived that challenge on appeal. As to whether the circumstances demonstrated Harden's ability to affirmatively object was overborne, Harden cannot establish that the district court clearly erred. For these reasons, this Court should affirm the district court's denial of Harden's motion to suppress.

### A. Harden waived her challenge that she was required to affirmatively object to the search of the residence because she failed to object to the magistrate court's report and recommendation on that point.

Harden challenges that the district court erred in finding that she was required to affirmatively object to the search of the residence in order to avoid having the recovered evidence be used against her at trial. (Harden Br. 25-37.) In its report and recommendation, the magistrate court found that Linder's probation conditions included a search waiver that allowed warrantless searches based upon reasonable suspicion. (Doc. 69 at 6-10.) The magistrate court also found that the strong order of marijuana created both reasonable suspicion and probable cause

supporting the search under the probation conditions.  (Doc. 69 at 10-11.)

Specifically as to Harden, the magistrate court held that because she and

Linder were cohabitants of the residence, "[h]er failure to object renders

the search constitutional as to Defendant Harden pursuant to [*Georgia*

*v.*] *Randolph*[, 547 U.S. 103 (2006)]."  (Doc. 69 at 13.)  Finally, the

magistrate court rejected Harden's argument that "the officers' display

of authority and pronouncement of intent to search the home pursuant

to Defendant Linder's search condition cowed her into silence and

prevented her from expressing any objection to the search . . . ." (Doc. 69

at 13-15.)

In her objections to the report and recommendation, Harden argued

that the magistrate court failed to include facts about how she "was not

free to leave during the time when police and probation officers were in

her home" and that "after Sergeant Roland entered the home, Defendant

Harden was forced to sit on her couch and was not free to leave."  (Doc.

71 at 2.)  Harden states that "[t]aking into consideration her Objections

to Findings of Fact outlined above, Defendant Harden objects to the

conclusion of law that '[Harden's] failure to object renders the search

13

constitutional as to Defendant Harden pursuant to *Randolph*'" because "[w]hen the fact that she was not free to leave is taken into account as well as the surrounding circumstances of there being multiple law enforcement officers present who were unconditionally declaring that they would conduct a search, Defendant Harden's failure to expressly object to the search becomes involuntary and must not be held as a waiver of her right to have objected." (Doc. 71 at 2-3.) Harden reasoned that "[w]hile it is true that *Randolph* appears to require express refusal to consent by the objecting tenant, it would subvert *Randolph* if police could avoid the possibility that a cotenant might refuse consent by detaining that cotenant and taking away the opportunity to object." (Doc. 71 at 3.) In the end, Harden argued that "the fact that [she] did not expressly object to the search is not dispositive" and that, instead, "the holding in *Randolph* should be extended to bar a search of a cotenant who is present but prevented from objecting to a search as a result of police conduct." (Doc. 71 at 3.)

In reviewing Harden's objection, the district court recognized that:

[t]he thrust of Defendant's objections concerns the R&R's explanation that, immediately prior to Sergeant Eric Roland

14

conducting the search of Defendants' home, Defendant Harden's sister, Tamara Harden, "attempted to leave the room, and Sergeant Roland requested she remain seated in the living room because 'we're probably about to conduct a search on this residence.'" (Doc. no. 69, p. 4.) Defendant Harden points to the R&R's omission of the fact that, on cross examination, Sergeant Roland testified both Tamara Harden and Defendant Harden were not free to leave at that moment. (*See* doc. no. 73, p. 28; doc. no. 74, pp. 2-3.) Defendant Harden argues this fact is critical because, when considered along with the totality of the circumstances, it establishes she was in custody at the time of the search and Sergeant Roland's conduct "significantly curtailed her ability to object . . . ." (Doc. no. 74, p. 2.) The Court disagrees.

*Linder*, 2019 WL 3554668, at *1. The district court concluded Harden "was not cowed into silence by police harassment, intimidation, or coercion" and "her decision to remain quiet and allow the search to occur was voluntary." *Id*. at *2. Therefore, the district court overruled Harden's objections and adopted the magistrate court's report and recommendation denying her motion to suppress. *Id*.

Harden's failure to object to the magistrate court's initial finding that she was required to affirmatively object to the search of her residence waives any challenge to that finding on appeal. *See United States v. Perkins*, 787 F.3d 1329, 1343 (11th Cir. 2015). In *Perkins*, the defendant "objected only to the magistrate judge's ruling on the

15

identification evidence" but "he did not object to the recommendation that the district court deny the balance of the motion to suppress as moot." *Id.* "Because Mr. Perkins did not object to the portion of the report and recommendation regarding the search of the bag, the computer, and the residence, he waived his right to challenge the district court's ruling on those motions on appeal." *Id.* (citing Fed. R. Crim. P. 49; *United States v. Holt*, 777 F.3d 1234, 1257-58 (11th Cir. 2015)).

Similarly, here, Harden's objection to the report and recommendation conceded that her failure to "expressly object to the search is not dispositive," and focused its argument on extending *Randolph* "to bar a search of a cotenant who is present but prevented from objecting to a search as a result of police conduct." She did not object to the magistrate's initial finding that, because Linder's probation terms granted consent to law enforcement to search the residence, she was required to affirmatively object to the search in order to prevent any of the resulting evidence being used against her at trial. Therefore, Harden has waived this challenge on appeal, leaving only the question of whether

16

she was cowed into silence by police harassment, intimidation, or coercion.

**B.** **Linder provided consent to search the residence based on his probation search waiver, and Harden was required to affirmatively object to the search where she was aware of the existence of the search waiver and that officers intended to search the residence.**

Even if Harden appropriately objected to the magistrate court's report and recommendation, the district court did not err in concluding that Harden was required to affirmatively object to the search. Linder's probation terms included a search waiver where law enforcement could search his residence based upon reasonable suspicion. Harden does not argue that the district court clearly erred in finding she was aware of the search waiver, that she was present at the residence, and that she was aware that law enforcement intended to search the residence based on Linder's waiver. For these reasons, this Court should affirm the district court's denial of Harden's motion to suppress.

As the Supreme Court explains, "The [Fourth Amendment] prohibition [against warrantless searches] does not apply . . . to situations in which voluntary consent has been obtained, either from the

17

individual whose property is searched or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Normally, "[w]hen a shared dwelling is involved, co-occupants can generally give valid consent to search if that person has 'joint access or control' over the area." *United States v. Morales*, 893 F.3d 1360, 1369 (11th Cir. 2018) (citing *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)); *see also United States v. Thomas*, 818 F.3d 1230, 1240 (11th Cir. 2016) ("[I]t is reasonable to recognize that any co-inhabitant can consent to a search of a jointly-controlled area because the co-inhabitants assume the risk that one of their number might permit the common area to be searched." (cleaned up)).[5] "If the police reasonably believe that the co-occupant 'possessed authority over the premises' at the time of entry, then the co-occupant's consent to

---

[5] "'Cleaned up' is a new parenthetical used to eliminate unnecessary explanation of non-substantive prior alterations." *See United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018); *see also Brownback v. King*, 141 S. Ct. 740 (2021) (using parenthetical term "cleaned up"). "This parenthetical can be used when extraneous, residual, non-substantive information has been removed, in this case, internal quotation marks, brackets, additional quoting parentheticals and ellipsis." *Steward*, 880 F.3d at 986 n.3. Its purpose is to improve readability. *See Barber v. Corizon Health*, No. 15-997, 2018 WL 1579472, at *10 n.10 (N.D. Ala. Mar. 30, 2018).

search is valid." *Morales*, 893 F.3d at 1369 (citing *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008)). However, where a physically present cohabitant expressly refuses to consent to a police search—despite the other cohabitant's consent—that refusal is dispositive as to her. *See id.* ("But the consent of one co-occupant to search can't trump the express objection of another physically present co-occupant." (citing *Georgia v. Randolph*, 547 U.S. 103, 120 (2006))).

In *Georgia v. Randolph*, a defendant's wife called police because of a domestic dispute, and then told the officers there were "items of drug evidence" in the residence. *See* 547 U.S. at 107. At the home, the defendant's wife consented to police searching their home; however, the defendant, who was also present, affirmatively refused to consent to the search. *Id.* Despite this, law enforcement searched the house, finding cocaine. *Id.* Ultimately, the Supreme Court agreed that the drug evidence must be suppressed because the warrantless search was invalid as to the objecting defendant. *Id.* In other words, "a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him." *Id.* at 106.

19

Subsequent caselaw narrowly construes *Randolph*'s holding, however. Specifically, in order for *Randolph*'s exception to apply, the cohabitant must be present *and* must actually, affirmatively voice an objection to the search. *See Thomas*, 818 F.3d at 1240-41; *see also Morales*, 893 F.3d at 1369 ("[I]f the person who would refuse consent isn't present or doesn't object, then the consent of the co-occupant who is there is good as against the absentee or silent co-occupant." (citing *Matlock*, 415 U.S. at 170-71)); *United States v. Harris*, 526 F.3d 1334, 1339 (11th Cir. 2008) (explaining taxi passenger who did not "actually express a refusal" to search when driver consented was not covered by *Randolph*); *United States v. Delancy*, 502 F.3d 1297, 1307-08 & n.7 (11th Cir. 2007) (holding defendant who failed to object was not covered by *Randolph* even though he possibly considered objection futile). As the Supreme Court explained: "'[I]f a potential defendant with self-interest in objecting *is in fact at the door and objects*, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.'" *Watkins*, 760 F.3d at 1280 (quoting *Randolph*, 547 U.S. at 121). To hold otherwise, the Court stated, "'would needlessly limit the capacity of the police to respond

20

to ostensibly legitimate opportunities . . . if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received.'" *Id.* (citing *Randolph*, 547 U.S. at 122).

Harden does not seriously contest on appeal that Linder's probation conditions qualified as a consent to warrantless searches of the residence. *See, e.g., United States v. Carter*, 566 F.3d 970, 973 (11th Cir. 2009) (holding officers only need reasonable suspicion to conduct warrantless search of residence based on conditions of probation). Her main issue is that Linder's consent should not be imputed to her, thus requiring her to affirmatively object to the search. Yet, prior to the search, Harden was aware that Linder's probation included a consent-to-search condition. (Doc. 44-5 (02:00-03:00); Harden App'x 54.) She was aware of law enforcement's attempts to confirm Linder's search condition prior to searching the residence. (Doc. 44-5 (01:30-02:30; 02:30-03:00; 05:00-07:00); Harden App'x 53, 54-55, 67, 69, 88.) While in Harden's presence, Sergeant Roland announced into his radio that he was about to search the residence based on Linder's probation search condition. (Doc. 44-5

(06:30-06:50).)  Where Harden had notice of the Linder's probation search condition, and where she understood that the officers intended to search the residence based upon that condition, there is no reason to treat the situation any differently under *Randolph*, *Matlock* and *Thomas* and require her affirmative objection to the search.  *See Morales*, 893 F.3d at 1370 (citing *L'Amoreux v. Vischer*, 2 N.Y. 278, 281 (1849) ("[A] man who does not speak when he ought, shall not be heard when he desires to speak."))

The Tenth Circuit's decision in *United States v. Blake*, 284 F. App'x 530 (10th Cir. 2008), cited approvingly by the lower court, provides some helpful analysis.  In that case, Ms. Blake was on probation and she was subject to a similar consent-to-search condition.  *See id*. at 532.  Her probation officer learned that Ms. Blake had a positive urinalysis test; law enforcement confirmed with the probation officer that they had evidence that Mr. Blake had been distributing methamphetamine.  *Id*. The probation officer and law enforcement agents went to the Blakes' residence to search it according to Ms. Blake's probation search condition. *Id*.  When they arrived, Mr. Blake was outside the home where he told

22

the officers that his wife was at the store. *Id*. The probation officer asked if they could check inside the house for Ms. Blake, and Mr. Blake let them inside, proceeding to the door of a bedroom. *Id*. Mr. Blake opened the door and officers could see Ms. Blake inside sleeping. *Id*. Mr. Blake woke up Ms. Blake and officers advised her of the positive urinalysis and that they were going to search the home. *Id*. Neither of the Blakes objected. *Id*.

The Tenth Circuit rejected Mr. Blake's contention that the search based on Ms. Blake's probation conditions was invalid against him. *Id*. at 535-37. The court explained that "the Supreme Court's decision in *Georgia v. Randolph* does not help Mr. Blake. . . . Although *Randolph* does not address a resident's right to refuse to consent to a search when it is authorized by a co-resident's probation agreement, we need not consider how *Randolph* might apply under such facts. Here, there is no indication that Mr. Blake objected to the search." *Id*. at 537. Similarly, here, *Randolph* cannot help Harden because she did not affirmatively object despite, like Mr. Blake, knowing that Linder had a probation

23

search condition and that officers were about to search the residence.[6] *See also United States v. Carter*, No. 05-349, 2006 WL 8447030, at *2 (D. Utah Apr. 14, 2006) (explaining, where police searched defendant's residence based on cotenant's probation search condition, "[w]hatever the particular legal theory justifying a search, so long as the search is valid at its inception and in its scope, a co-occupant affected by it cannot complain that her Fourth Amendment rights have been violated.");[7] *Donald v. State*, 903 A.2d 315, 321 (Del. 2006) (holding that "[w]hile a co-occupant does not forfeit her own Fourth Amendment rights by allowing a probationer to live with her, she must object to the search to which the

---

[6] Notably, unlike Mr. Blake, on appeal Harden does not contend that the search under Linder's probation terms was, itself, unlawful. *See Blake*, 284 F. App'x at 536. In her brief, Harden attempts to distinguish *Blake*, claiming that Mr. Blake voluntarily led officers to a bedroom where they then saw the drugs in plain view. (Harden Br. 35.) But *Blake* is not a plain-view case—officers did not observe the drugs until *after* they began searching the bedroom pursuant to the probation consent-to-search waiver. *Blake*, 284 F. App'x at 533.

[7] Further, the *Carter* court acknowledged *Randolph* and explained that "[i]f a search of a probationer's residence is premised on the probation agreement as consent, *Randolph* raises the interesting possibility that a refusal to consent to a search by a probationer's cohabitant could frustrate the search provisions of a probation agreement." 2006 WL 8447030, at *2 n.1. But, like Harden, in *Carter* the defendant did not affirmatively object to the search. *See id.*

probationer has consented in order to prevent a search without a warrant."); *cf. Thornton v. Lund*, 538 F. Supp. 2d 1053 (E.D. Wis. 2008) (holding, in § 1983 case, that Fourth Amendment right may have been violated based on *Randolph* where plaintiffs' affirmatively refused officer's entry into residence despite co-tenant having probation search condition); *Taylor v. Brontoli*, No. 04-487, 2007 WL 1359713, at *1 n.4 (N.D.N.Y. May 8, 2007) (agreeing, in § 1983 case, that even where plaintiff does object, *Randolph* does not apply where plaintiff is aware residence is subject to cotenant's probation search condition).[8]

---

[8] In the cotenant's probation-search-condition context, there is some question whether *Randolph* applies only to those situations where the defendant has no knowledge of the search condition applicable to the residence; otherwise, if the defendant has knowledge of the cotenant's condition, then even an objecting defendant may be subject to the search. *Cf. Barajas v. City of Rohnert Park*, 159 F. Supp. 3d 1016, 1025-26 (N.D. Cal. 2016) ("Similar to *Thorton*, the implication of *Taylor* is that where the co-resident has no knowledge of the search condition applicable to their home, if that person is physically present and refused to the search, that refusal is dispositive as to him or her."); *Taylor*, 2007 WL 1359713, at *1 n.4. Here, the Court need not reach that particular determination because the record demonstrates that Harden did not object; therefore, even if *Randolph* does apply, the district court did not err in finding the search appropriate.

**C.    The district court did not clearly err in finding that law enforcement did not threaten, coerce or otherwise unlawfully cause Harden to not affirmatively object to the search.**

Finally, Harden asks this Court to extend *Randolph*'s holding so that a physically present person is not required to object to a search where their will has essentially been overborne by law enforcement threats or coercion.  (Harden Br. 37-40.)  Her argument is entirely premised on the fact that, at some point, law enforcement asked her to sit on the living room couch and she was not free to leave.  Yet, there is no evidence that officers made any threats or lied to Harden, or that they had their guns drawn, or that they yelled at her.  To the contrary, the evidence showed that the officers and Harden calmly interacted with each other.  Sergeant Roland explained that Harden was not hostile and did not appear to be under any type of duress or under the influence. (Harden App'x 68.)  Even though she voiced no objection to the search, she voluntarily invited officers into the residence and was otherwise able to communicate with them, answering their questions.  (Harden App'x 51, 52, 54, 65, 66, 87; Doc. 44-5 (00:00-05:00).)  In fact, Sergeant Roland discussed Linder's search conditions with Harden even before she was

placed on the living room couch, and Harden claimed there was nothing the officers needed to know about. (Doc. 44-5 (02:00-03:00; Harden App'x 54.) Moreover, Harden was not placed in handcuffs until *after* the drugs were found. (Harden App'x 59.) Based on the totality of the circumstances, there is simply no evidence that officers unlawfully overbore her will to voluntarily object.

In adopting the report and recommendation, the district court correctly observed that these facts would not even support a finding that a defendant who consented to a search had his will overborne by law enforcement. *Linder*, 2019 WL 3554668, at *1 (citing *United States v. Telcy*, 362 F. App'x 83, 86-87 (11th Cir. 2010)). In *Telcy*, this Court found that a defendant could still voluntarily consent to a search even though he was in handcuffs and in police custody. *See* 362 F. App'x at 86-87. Similarly, in *United States v. Ramierez-Chilel*, 289 F.3d 744 (11th Cir. 2002), this Court held the defendant voluntarily allowed officers to enter his home and his ability to refuse entry was not overcome by officer's "show of force" because their guns were not drawn and there was not a large number of officers surrounding the residence ready to arrest the

27

suspect. *Id.* at 751; *see also United States v. Spivey*, 861 F.3d 1207, 1215-16 (11th Cir. 2017) (explaining consent to search voluntarily given where defendant invited officers inside home, she was not handcuffed or under arrest, and encounter was polite and cooperative); *United States v. Savage*, 459 F.2d 60, 61 (5th Cir. 1972) ("Nor are we persuaded that the defendant's will was overborne by the presence of a number of FBI agents and police officers at his residence when the defendant executed the consent form.  Though some of those present did possess firearms, there is no indication in the record that the weapons were handled in a threatening manner."); *United States v. Burwell*, 763 F. App'x 840, 847 (11th Cir. 2019) ("[T]here is no evidence of any inherently coercive tactics, either from the nature of Powers's questioning or the environment in which it took place.  Rather, the encounter was 'polite and cooperative,' and Powers 'used no signs of force, physical coercion, or threats.' . . . Nothing in the video and audio record shows that Powers lied, deceived, or tricked Burwell . . . .").  If the circumstances of Harden's case would not support invalidating a defendant's affirmative consent, it follows that those same circumstances do not invalidate a defendant's voluntary choice not to object to a search.

28

Under the totality of the circumstances, there is no evidence that law enforcement acted in a way that overbore Harden's ability to object to the search of the residence. *See Delancy*, 502 F.3d at 1307-08 & n.7 (holding defendant who failed to object was not covered by *Randolph* even though he possibly considered objection futile). For these reasons, the district court did not err in finding that the search of the residence was lawful because Harden did not affirmatively object.[9]

## CONCLUSION

For the reasons above, the United States respectfully requests this Court affirm the district court's judgment.

---

[9] Because the search was valid, the district court appropriately denied Harden's fruit-of-the-poisonous tree argument regarding her subsequent statements. (Harden Br. 41-42; Doc. 69 at 15.) Further, the government notes that Harden also did not object to the magistrate court's report and recommendation as to her fruit-of-the-poisonous tree claim. (Doc. 71.)

Respectfully submitted,

DAVID H. ESTES
ACTING UNITED STATES ATTORNEY

*/s/ Justin G. Davids*

Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661
*justin.davids@usdoj.gov*

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number: 912-652-4422

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,044 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

My office complied with 11th Cir. R. 25-3(a) by today filing this brief electronically through the 11th Cir. E.C.F. system.

This brief complies with Fed. R. App. P. 25(d) because its E.C.F. filing constitutes automatic electronic service on Daniel James O'Connor, Lakesia Lashea Harden's attorney, under Rule 7.2 of the 11th Cir. Guide to Electronic Filing.

This April 2, 2021.

31

Respectfully submitted,

DAVID H. ESTES
ACTING UNITED STATES ATTORNEY

*/s/ Justin G. Davids*

Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661
*justin.davids@usdoj.gov*

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number: 912-652-4422